Before we get to our main business this morning, we have one of these pleasant family occasions where we welcome the law clerks into the membership of our bar, and I would like to make a first motion. I would like to move the admission of Sidney Kessel, who is a member of the bar and is in good standing in the highest court of Maryland. I have knowledge of her credentials and am satisfied that she possesses the necessary qualifications. That is what I'm obligated to say, but I would go further and say that Sidney's been with me as a law clerk for almost two years. She has been terrific to work with. She is very smart. She has helped me a great deal, and I know she'll be a success as a member of the bar and in life. And so I would move the admission of Sidney Kessel, and since I cannot rule as I am a party, I Judge Toronto, do you think we need to deliberate? We can just vote. Okay. All in favor? The motion passes. Congratulations, Sidney. Welcome. Judge Toronto, I believe you have four motions. I do. I have the honor to move the admission to the bar of this court of four fine young attorneys who are also my law clerks, Meg Fasulo of the Bar of Illinois, Jeff Kane of the Bar of Maryland, Alex Shank and Brian Springer of the Bar of California. It has been my privilege and my pleasure to work with them this past year. Each one has been a superb colleague as advisor, scholar, critic, writer, and perhaps most important, warm and light daily presence in a sometimes intense environment. For a year I have benefited greatly from their commitment, their excellent work, and their good humor. I will miss them and I envy all those who will be lucky enough to work with them as they move into the next stages of quite promising careers. I know that our court's bar will be brighter for their membership, and so I move the admission of all four to the bar of this court. I have knowledge of their credentials and am satisfied that they possess the necessary qualifications. Judge O'Mara. These multi-party cases are much more difficult. But I would vote in favor of granting the motion. I will too, and I will also amend my motion with respect to Sidney to include all that Judge Tavano said about his law clerks. Welcome to the bar. Well, you need to take the oath, all of you. We can't welcome you yet. Please raise your right hands. Do you solemnly swear to affirm that you will comport yourself as an attorney and counselor of this court, uprightly and according to law, and that you will support the Constitution of the United States of America? I do. Congratulations. Welcome to the bar. Congratulations. Congratulations. Congratulations. Congratulations. Congratulations. Let us now proceed to our scheduled business. We have five cases on the calendar, three patent cases, two of them from district courts, one of them from the Patent and Trademark Office. We have a case from the Court of Federal Claims regarding an Indian claim and a government employee case that is being submitted on the briefs and therefore will not be argued. The first case is labeled on the briefs, semantic, but I understand there was a transaction, and it is currently Veritas Technologies v. VM Software, 2015-1894. Mr. Marshall. Thank you. May it please the Court, Lee Marshall for the appellant. The issue I'd like to initially focus on this morning is one of claim construction, namely whether the claims require a particular set of files to be restored. It is our position that the plain language of the claim clearly answers this question. Claim 20, for example, requires a restore application starting a restore of a set of files from a backup storage. Can I ask you, is the formulation you used different from or the same as saying that the restore application, in your view, has to operate at the file level, not the block level? Except, of course, when it is doing the bidding of the file server, saying grab a block. I think it is very similar, Your Honor. Our position is that, in fact, the invention is designed to restore files. It uses the file server and the file system to determine which blocks correspond to those files. And that is, in fact, a file level restoration. As you recognize, the on-demand portion of the restoration is at the block level by necessity. But when the claim says start a restore of a set of files, you can't start that restore unless you know which files you're restoring. Well, it seems to me that's not necessarily true. That is, I take it that the one pretty darned helpful piece of language in the claim is the language that talks about the restore application, was it starting restoration of a set of files. And that might, well, in fact, I think it does tend to suggest that the restore application, again, the background, the default restore application, not the grab a block piece of it, is operating at the file level. But it seems to me it doesn't strictly necessarily do that. That it could be it is, in fact, starting a process that results in the restoration of a file. Without doing it by calling a file name and then referring to a table that says which memory blocks have the pieces of that file. Right, and that's essentially what the board said. It said if you go ahead and restore the entire backup storage, if there are files on that, you will necessarily restore those files as part of that process. Our contention, however, is that that would read the set of files language out of the claim. It would render it to not really have any meaning. It would be superfluous. You might as well say start a restore of a backup storage. You might as well say start a restore of files. But this says start a restore of a set of files. It's not any files. It's not random files. It's not just a file that happens to be on the backup storage if you restore the entire thing. It is a set of files. Isn't the language in Claim 20 that's actually more helpful to you, the language that describes what occurs during the restore? Yes, Your Honor, and I was just about to move there. You're right. If you can't determine what – you can't determine that a block of data in the file and the set of files needed by an application has not been restored unless you know which files are being restored. And you certainly can't do that during the restore of the set of files unless you know which files are being restored. The claim structure requires that these three steps, determining, directing, and restoring all occur during the restore of the set of files. And you simply can't know that you're doing that during the restore of the set of files unless you know which files you're restoring. And the specification is entirely consistent with this concept. It consistently describes a process that identifies the files to be restored. So, for example, the specification – Can you answer this question? And the first step in answering it may be to reformulate it so that it's coherent, if that's even possible. You have a choice, and the Board describes block-level restoration and file-level restoration. So the question that I'm trying to articulate and then get an answer to is, your invention is to allow a process of restoration in the background to be going on and at the same time, an application that the user is employing needs a bit of information and the file server can say, get that piece of information even while the background restore, I guess, is going on. What is the meaningful difference in your invention, in operation, that would turn on whether the background restore is going on at the block level or at the file level? How does it matter at all to this interrupt or reprioritize as to a block? Why is it important? I mean, what I would say, Your Honor, is – I should just say, because that seems to me to matter in how I'm reading the specification, whether the specification is saying, look, here's the idea, and that idea really only makes sense if the background restorer is operating at the file level. The critical invention here is the integration of the file server and the restore application together. It's the file server with the file system that tells you which blocks of data correspond to the files that you would like to restore. And unless you integrate those two things, which is what the invention of the 527 patent does, you're not going to be able to tell, for example, that a particular block of data corresponds to a particular file. So, for example, the prior art that the board relied on, the O-RAN patent, that was a pure block-level mirroring system where there was simply a one-to-one correspondence or a mirroring of a data block on the storage device and a data block on the primary device. But how does the program in O-RAN know which blocks of data it needs to restore? Because it doesn't contemplate always mass storage, correct? Well, it contemplates mirroring up the data blocks that correspond between the secondary and the primary storage devices. And so it simply is analyzing to see, you know, are these things the same on a regular basis so that it knows that the secondary storage is a mirror of the primary storage. But there's no file-level information in O-RAN. In fact, O-RAN specifically says that during a remirrored data is copied on a physical block basis rather than a logical file basis. So O-RAN specifically distinguishes the file-type memory. And that type of restoration makes sense in certain circumstances. It can be more efficient. It can be file system agnostic. It doesn't need to interact with the file system. That's one type of restoration. But the invention of the 527 patent is a different type of restoration. It's one that is focused on restoring files, doing a file-level restoration, determining which blocks correspond to those files, restoring those blocks, and then doing an on-demand restoration of particular blocks for particular files as they are needed by the applications. The specification consistently describes that process. It talks about a correspondence or map of where the data is coming from on the backup storage and where the data is going on the primary storage. And that can only be generated if you know what files you're restoring. It continues and says this mapping of source and destination information may be performed for all files to be restored up front. So, again, there's this idea that you know which files you're restoring when you start a restore of a set of files. It says the restore application may provide the file names and sizes of the files and potentially other information about the set of files. Can I just double-check something? The grab something new priority. The claim does not require that that itself be a file. It just has to be a block that is located, is part of some file. It requires that it be a block in the set of files to be restored. And critically, the specification elaborates on that and says if a file accessed by an application does not involve a file that is being restored, then the file system may determine that it does not need to check the map to determine if the file's blocks have been restored. So, in other words, if you're not restoring that file, you don't even need to go through the determination step that's in claim 20, for example. Unquestionably, there's lots of talk. There are many embodiments that talk quite specifically about the background restorer operating at the file level. I guess I was left less than overwhelmed about the clarity with which the specification or the claim language say it's only background restorers operating at the file level that this invention contemplates. And I still can't quite understand what it is about the invention that would be different according to whether the background restorer was a file level or a block level one. Well, it's because it allows you to select the particular files that you want to restore and not have to restore a much larger group. I'm sorry, but that's why I guess I asked you the question. The claim says I want to restore a particular block. That's on the on-demand portion. Right. Okay. But there's that, as you recognize, there's that file restoration going on in the background. And then when an application requires a block, then it prioritizes, if you will, pulling that block down so that it can be accessed by the application. And so it's really a two-process. It's a combination of this file level restoration and this on-demand block level restoration. And that was really the heart of the invention, which, frankly, the board, through its construction, ripped that heart right out of the invention. The board's decision that the 527 patent does not require file level knowledge can't, in our view, be squared with the claim language that we've been discussing, all of the embodiments of the specification. Every single embodiment in the specification requires that the restore application determine whether or not the file needed is one that is being restored. There is not a single— Marshal, you're into your rebuttal time, which you wanted to save. I assume you would still like to save it. I would like to save it, Your Honor. We'll give you your full three minutes. Thank you. Mr. Pickard? Good morning, and may it please the Court. There's no dispute in this case that a set of files, as claimed in the 527 patent, can mean all files of a disk. I would point the Court to, for instance, Symantec's reply brief. You need to speak up. Yeah, I'm sorry. As I said, there's no dispute in this case that a set of files, as recited in the claims, can mean all files on a disk. And I would point the Court to Symantec's or Veritas' reply brief at page 5, where they state, although it is true that the set of files could include all files stored on the backup disk. And the Board found, and there's substantial evidence to support that finding, that when one restores the entire contents of a backup disk, it also restores all files on that backup disk. Right, but in this patent, you have the whole concept of the mapping that considers where the files are stored on particular blocks. In the description. There is no recitation of that in the claims. The dispute really hinges on whether there is this unrecited requirement that the general backup system, whether it first identified whether particular blocks correspond to particular files. Well, let's look at the language in Claim 20 that I was pointing to before. Restore application, starting restore of a set of files. So that's where you would say, well, a set of files could be the whole disk, is what you're saying. But go to the next where it says, during said restore, a file server determining that one or more blocks of data of a file in the set of files needed by an application have not been restored. So there is a more refined analysis that's going on there, aside from the notion that you could just pull up the whole disk in a mirror system, right? I think that's fair. I think if we look at what O-RAN describes in its Channel 1 restore, that's the on-demand restore, what happens there. So as the general restore in O-RAN is occurring, an application would call for a particular block, and of course that would happen in an obvious fashion through using a file system. In O-RAN, it would also use an overwrite map to determine, has that block been restored? And if it isn't, then it would do the on-demand Channel 1. And in that sense, O-RAN has determined whether a block that is needed by an application has been restored. And as it happens, if you're doing a full disk restore in O-RAN, those blocks would be part of the restored set of files that's recited earlier in Claim 20. Well, and your friend on the other side argues that what you're really arguing is an alternative obviousness analysis that you never argued before. That is not the case. If you look at the record below, even if the patent owner's claim construction were to hold in this case, what the evidence below showed was that O-RAN has that on-demand restore, that first channel. It has a general backup restore, that's Channel 2. They contend that that's a block-level restore. O-RAN also teaches that the user could restore a subset of the disk, and that is, let me draw your honor to the correct portion of the record, that's O-RAN paragraph 44 at A620.  A selected data set may include the entire backup mass storage or just a portion thereof. And when you take that teaching and look at what Windows NT teaches, the file system, one obvious way that O-RAN could select a portion thereof is by selecting files. So is your better argument that the claim construction is right, or is your better argument that even if the claim construction were wrong, O-RAN still teaches that? I haven't considered what is the better argument. I think we win on both. We have a better standard of review on the second question. There's substantial evidence in the record to support such a finding that it would have been obvious to combine the teachings of O-RAN and Windows NT to arrive at the claims, even as patent owner would have construed them. Putting aside what you argued to the board about these two different points, where did the board make findings on the second point? So the board did make findings that one could have combined the teachings of O-RAN and Windows NT. O-RAN states that it can run on a general purpose computer, and the board found that Windows NT could have as well, and those could have been combined. I don't think they made the finding that we put in our brief as an alternative basis to affirm. To answer your Honor's question directly? Yes. I thought that was my recollection, that even assuming that this was a preserved argument, it's not one that the board has actually made specific findings on, so we couldn't make those findings ourselves. I do want to return to the claim construction issues. So as I said before, what I think the patent owner is trying to do here is they claim a particular result, so essentially a process that results in the restoration of a set of files. O-RAN does that when it does a full disk backup. What they're asking this court to do is to change the claims and require that that result be achieved in a particular way, essentially by knowing or pre-selecting files, and they simply didn't include that step in their claims. Can I ask you the same, I think, opening question that I asked your friend on the other side? When I think about this case as involving a dispute about whether the background restore application operates at the file level or the block level, is that an accurate characterization of what the dispute is, or am I off by something? I don't think that quite captures it. When we step back, the board has a very nice tutorial in its final written decision where it explains how the file level relates to the block level. It's one paragraph. The file level is just an abstraction of a collection of blocks, and typically that's done in computers using the file system. My understanding of what they've said is that in a file level restore application, the restore application essentially names the thing it wants to restore, and it's a file, and then there's something else, basically a table, that says here's where you find all the pieces in the memory, and the block level one just says memory location, x, y coordinates or something. That's right, but in both cases, the backup restoration looks at the block level, whether it starts at the file level or starts at the block level. Ultimately, but that's why I guess I'm trying to understand whether the way I've been thinking about what the dispute is here as whether the restore application has to operate at the file level, in the sense that the first thing it does is call up a file and then it leaves to somebody else to figure out where the blocks are. I think the dispute is more particularly focused on whether the system has to identify or pre-select files. Frankly, that's just not in the claim language. Everybody agrees that the restoration is occurring at the block level. It's just a question of whether you identify through this mapping system the files first before you go to the block. That's very well said. I think that's in essence the dispute on the set of files limitation. What's the point of the mapping system if you're not identifying the files? Because really in O-RAN it's a mirror. You just figure out what's corrupted. The point of the mapping system in O-RAN is you've got the general backup occurring. Let's say, for example, an application wants to call a particular block. It happens to be part of a restored file. It uses that map to determine has that file been restored in the general backup restoration or has the system made a new write to the primary drive. It uses that to determine whether the on-demand call is the appropriate thing to do in that instance. Are you talking about O-RAN or are you talking about the patent? I'm talking about O-RAN. They don't claim a map in there. Right, that's what my point is. I'm seeing a distinction between O-RAN and the patented invention. That's what I'm trying to understand. What would be the point of the mapping system in the patented invention if all you had to do is what O-RAN does, which is to have a mirroring system that just says is something corrupted or not? If it's corrupted, it comes up. I'm not sure I understand Your Honor's point. I think if you operate at the file level, there's at some level a map. The file system has to map the logical file down to the block level. Okay, so where is O-RAN operating at the file level? O-RAN is silent about whether or not it operates at the file level. Windows NT, to the extent that teaching is missing or would not have been obvious just from O-RAN, Windows NT would provide that missing teaching. It describes a file system. But O-RAN has the map, has a map that allows it to determine, for instance in the steps of Claim 20, whether a block has been restored already. I'm concerned that I'm not addressing Judge O'Malley's question. Okay. I don't want to be two ships passing in the night on this issue. Can I ask you a question about the amendment? The motion to amend, yes. Yes, the motion to amend. Do you agree, and I don't recall a dispute on your part, that the language of one or both of the proposed amended claims, 26 and 27, captured the idea that they were arguing for in their claim construction? Call it file level, restore, use of a map, whatever it is. I don't remember your disputing that. I don't think it was a relevant dispute, whether their proposed amendments captured what they intended the claim construction to be. The position we took in the motion to amend was that they lacked written description support, that other are of record and other are outside the record. The board rejected the motion to amend on really a pleading basis, not an evidentiary basis, not a burden of persuasion basis, just a pleading basis. It says you have to address the new features and where in the prior art they are, and you didn't. I agree with that, yes. Here, I guess, is what I'm troubled by about that. Lots and lots of inventions we in the Supreme Court have said forever are the only new feature is the combination of old things. The new feature here is, using my term of what they wanted in the claim construction, is grab a block during a file level restore. How do you describe that without describing the claim, the whole claim? I can't figure out what the board thought that they should have said, that there are file level restore applications? Everybody in the world knows that. It says it right in the background of the patent, that you can have a set of files that's part of a plurality of files. It's a logical truism. It seems to me for them to say in the proposed substitute claims, here's the new thing. We're actually going to do this on a file level restore or the verbal equivalent of that. You've described the whole claim. I don't know what it is that the board wanted them to segregate. I think what the board wanted them to do, so it's a contingent motion to amend. So at the moment, the board addresses this claim 20, for example, is the prior art. It's an obvious claim. So they say, what does the new feature add to it? Now, even if that element or elements that they've added to their substitute claims are caught in the prior art, Patent Owner still has an opportunity to show why the addition of that known element would not have been obvious in combination with those other elements. Right, but the board didn't deny the motion to amend because of essentially the evidentiary issue. It was a pleading issue. You did not address these features separate and apart from the whole claim. And I'm genuinely puzzled what that even means in this case. That's just one part of what was required of the Patent Owner. So even if the Patent Owner hadn't met that, that wasn't the end of the game for their case. They would have to go to the next step. That sounds like a remand argument. Excuse me. Well, I think it's important to keep in mind the standard of review here. We have an abusive discretion review, the board's application of its rules, and Patent Owner has not pointed to anything that would amount to an abusive discretion. What they've said in their brief is that the board overlooked evidence or made a ruling that was contrary to substantial evidence. There's substantial evidence on both sides. It's not enough to say that, well, we had some evidence on this side of the ledger, therefore it was an abusive discretion. But pleading failures don't usually have to do with evidence at all, and the board didn't say you don't have enough evidence of this. You said the board said we reject the motion to amend because you didn't address these things in your motion and the supporting declaration. I think the board did use that language, but when you read on, they do quote where Symantec at least facially tried to address it. Symantec, Veritas, excuse me, had one sentence for each claim where they addressed the newly added feature, and the board I think appropriately is setting a high bar for Patent Owners to amend their claims. But my trouble, at least with respect to the first proposed amendment, is that it directly goes to the entire debate that you all were having before the board and that you're having here. In other words, you say the claim should be construed to say X, and they think it should be construed to say Y, and the amendment is to make it absolutely clear that the claim says Y. Now, for the board to now say that that's not enough when that is the entire debate, and to say that the patent owner should have done something more doesn't seem to make much sense. I think it does in this context. We don't have the benefit and the IPR of the iterative examination process that happens in an ex parte case. So the patent owner has the burden. They've got one shot to show why this new feature by itself and in combination with the other elements of its claim was not known in the art, would not have been obvious, were anticipated, because what they're asking the office to do is issue a brand new property. But it certainly would have overcome all of the claims of obviousness that you made, at least as to the first proposed amendment. I disagree. And there's been no finding in the record on that point. Well, the board didn't make any finding. It basically said even though you're directly addressing the very debate that we have, we think you should have addressed 1,000 other debates that could theoretically be out there. So the newly added claims would not have overcome our obviousness showing as to the existing claims. And we have put in additional art to show why those newly added claims features individually and the claims as a whole were obvious. I don't agree that those new features would have overcome our obviousness case below. I just wanted to clarify that. Thank you, Mr. Pickard. We'll hear from the Patent Office for five minutes. Ms. Schoenfeld. May it please the Court. I think to address your question, the best place to look is to their motion to amend itself. And if we look at page 13, which is A357 of the record, and I think also the board, like Judge O'Malley was saying, that the dispute was about X or Y, but the board interpreted the claims as only X. So these new features were indeed, the board interpreted them as not being part of the claims originally and as being completely new limitations, which were added to the claims. And if we look at what Veritas said in the motion to amend on 357, the statement about whether these new, completely new claims to the board are patentable over the known prior art is simply that neither patent owner nor Dr. Levy are aware of any prior art that is closer to the subject matter of the substitute claims as a whole than the four asserted references remaining in this proceeding. So they admit that there's at least... Can you tell me, what do you think the board thought, or do you think they should have said? That they should have said, there is no prior art that shows a file level restore application. No, that would be ridiculous. Their patent doesn't exist. Of course that's not a prior art. Do you think that they should have said, there is no prior art that shows a set of files that's part of a plurality of files? That would be ludicrous. I'm completely perplexed about what the difference is here between what the board criticized them for doing, which is talking about the combination with other known features and something else. I don't know what the something else is here. Right. I think what the board was saying was they didn't address the newly added features. You're saying that you have A, you have these features related to the file level restore in combination with the other features, B. But a file level restore is not new. What's new is the combination. Well, they didn't even address the combination. If we look at this statement, this statement which they said about the known prior art, they just said is not aware of any prior art that is closer to the subject matter. That doesn't even discuss combining ORAN with other file level restorations. As you acknowledge, Your Honor, there is a number of prior art references in the record which discuss file level restoration. They never discussed why that combination wouldn't make the claim, the substitute claims obvious. But my problem is that the page and a half in which the board says, here's why we are denying the motion to amend, doesn't say they have insufficient evidence of the non-obviousness of the combination. It says they addressed only the combination and not the pieces. And I just, that's a mystery to me. I mean, I think the board indirectly said that. If we look at what the board said on A27, the board said that you must discuss the features added to the claim. And the reason why is because you're exploring the differences between the scope and the content of the prior art and the claimed invention. And they cite Graham v. Deere, which is the classic case of 103. What do you think, and put aside this case for a minute, a patent owner should do when it is the only new feature. Is new feature here something to mean a feature that wasn't in the original claims or the feature that makes it novel and non-obvious, allegedly? I mean, here the patent owner, you know, this claim's issue, it's going to be issued as a patent. And it's their burden to show that the claim is patentable. So I think if they're adding something to the claim, they're presumably adding it because they think that that makes it patentable. That the combination is patentable. Right, the combination is patentable. And if that's the only basis for patentability, not that the thing that they're added is something itself in isolation, new, how can they possibly talk about the new feature separate from the combination? Well, they still need to show the board where that new feature is known in the prior art. So like you said, if they know that the file restoration is known in the prior art, they can say, well, here's where it's known in the prior art, combining these two makes it patentable. There's no statement in their motion about combining the two features or, you know, why you wouldn't be able to combine, you know, Windows NT or Kodima or another file restoration art with the, you know, with Oron. So they didn't discuss how even that combination. So I think what they should have said was that here's the newly added features. Here's, you know, where they might be in the prior art or discussion of file level restoration in the prior art, but here's why they're not obvious to combine with Oron. And that discussion is missing from their motion. Thank you, Ms. Shonko. Mr. Marshall has three minutes for a vote. Can you start with that last point? I would love to start with that last point. Your Honor, I think the issues in the IPR were clearly joined. It was one of claim construction that we've been discussing. We filed a contingent motion to amend to address precisely this issue. And so it is a mystery to me, too, as well why the board felt like it needed all this other information. But the thing is, we provided it. Dr. Levy's declaration says, and I'm looking at paragraph 82, techniques for performing a restore of a file from a backup were known in the art. And it cites four references right there. We provided the board exactly what the board said we didn't provide. So in our mind, and it goes on, paragraphs 80 through 89 discuss the prior art in detail, including limitations that we were adding. Paragraphs 92 and 95, which the board cited and said that we only discussed the newly added features in combination, the board just misread those paragraphs. Paragraph 92, which is directed to substitute claim 26, basically says here are the three features, A, B, and C, that are being added to clarify this issue. And no prior art that we found has A, B, or C. The word or is in there. They're not addressed in combination. Paragraph 95, which addresses claim, substitute claim 27, addresses the two newly added features in different sentences. And it says none of the prior art that Dr. Levy was able to identify has those features either. And it goes on and on from paragraphs 115 through 149 of his declaration. We submitted a 70-page, 149-paragraph declaration to try to address the board's seemingly moving target requirements for a motion to amend. And we were denied on a purely procedural basis based on a single sentence and a non-precedential order in a different case. And this is Toyota. Not idle free, which is also, I guess, technically non-precedential. That's correct. It's informative. We did find it informative, Your Honor. But the Toyota case is the one that had this requirement of, if you would want to call it a requirement, of saying the newly added feature, you have to describe where it is in the prior art. We hit all of those points. It's in Dr. Levy's declaration. You know, the Supreme Court affirmed the BRI standard in the Cuozzo case in part because it believed the opportunity to amend made the use of that standard fair. Or not obviously unfair, I think is the word. That's correct, Your Honor. But the Supreme Court recognized that the manner in which the board applies the standard may be an issue. It said it wasn't presented in that case. Well, it's squarely presented here. It's a big issue in the case here. The board got it wrong on the law. The board got it wrong on the facts. If you look at Dr. Levy's declaration. And we think there should be a remand there. Now, with respect to ORAN, the five to six. I think you've concluded your time, Mr. Marshall. So we'll take the case on revising. Thank you very much, Your Honor.